JOHN F. DWYER, PLAINTIFF-RESPONDENT, v. LEHIGH
VALLEY RAILROAD COMPANY, A CORPORATION, DE-
FENDANT-APPELLANT.

Submitted October 5, 1943—Decided October 19, 1943.

Before BROGAN, CHIEF JUSTICE, and Justices BODINE and
COLIE.

For the plaintiff-respondent, *Hoberman & Hoberman* (*Sol
Hoberman,* of counsel).

For the defendant-appellant, *Collins & Corbin* (*Edward
A. Markley* and *Charles W. Broadhurst,* of counsel).

The opinion of the court was delivered by

BROGAN, CHIEF JUSTICE. This is the defendant's appeal
from a judgment, recovered by the plaintiff in the Hudson
County Court of Common Pleas, for personal injuries. The
complaint comprises two counts: the first a cause of action

for damages grounded on defendant's negligence; the second is based on the claim that plaintiff as a seaman was in any event entitled to a verdict and judgment under maritime law for "maintenance and cure" as a causal sequence of his injuries. The first count is grounded on the provisions of the Federal Employers' Liability Act (45 *U. S. C. A.*, § 51), the second on the ancient custom or tradition of maritime law.

The reasons advanced to support a reversal of the judgment are that the court erred in denying defendant's motion for direction of verdict on the first and second counts of the complaint and that the learned judge misconceived the law of the case and consequently fell into error in charging the jury.

The plaintiff was an employee of the defendant railroad company and had been such for a year prior to the accident which occurred on March 8th, 1941. He worked on its harbor boats and at the time of his mishap was assigned to the tugboat *Allentown*. His rating was that of "extra" tugboat captain and when not so employed he worked as a mate or a deckhand. He was paid by the day and on the date in question worked eight hours, his shift beginning at 2:30 in the morning and ending at 10:30. On the night in question the weather was inclement; the log or record of the *Allentown*, in this particular, read: "Strong N. E. wind and snowing and hail, rain. Frosting bad." The *Allentown* was engaged in moving a barge, moored at Pier B in Jersey City, New Jersey, on the north side. Just prior to the mishap the plaintiff, Dwyer, had been casting off the lines which made the barge fast to the pier. The barge had what might be called a super-structure known as a "freight house" which is almost as long and as wide as the barge itself. There is a clearance of a foot on the sides and a larger clearance at the ends. This freight house, according to the exhibits, has two doors on each of its sides to permit loading and unloading of cargo. It had been unloaded that night prior to the accident. Along the freight house from stem to stern, except at the doorways, is a steel cable probably waist high. This, a safety device, is a permanent fixture on the sides of the freight house. Across the doors which must be opened up for the operation of loading and unloading is a length of

rope, one end permanently fastened to a side of each doorway, the other end to be tied to the steel cable on the opposite side of the door.

As Dwyer was performing his duty on the night in question he walked along the side of the barge and as he reached a place near one of the doorways the barge moved slightly away from the pier and he lost his balance. In an effort to save himself from falling he grabbed for the rope line that should have been across the doorway. The rope, however, was not in place. Someone had failed to tie it to the steel cable at the far side of the door and he fell, striking his shoulder against the bottom of the door jamb. The accident occurred about half past three in the morning and he continued work until ten-thirty. The negligence charged is that the defendant failed in these particulars: to exercise "reasonable care to provide plaintiff with a reasonably safe place" to work; to have reasonably safe devices for the performance of the work and to provide a proper guard line on its barge.

Under the first point—that it was error to deny a motion for direction on the first count—the appellant seems to argue that in this case there was a mere scintilla of evidence of negligence and that therefore under such cases as *Pellington* v. *Erie Railroad,* 115 *N. J. L.* 589, and *Malarani* v. *Reading Co.,* 119 *Id.* 43, 46, the case should not have been sent to the jury. As we read the proofs there is no merit in this point. The evidence relating to the fact that the safety rope was not in its proper place at the time of the happening was definite, precise and uncontradicted. The appellant proceeds to argue that the proofs on its part showed that all safety lines were in place a matter of ten hours prior to the accident, that is, at 5:30 P. M. on the preceding afternoon. But during this interval it appears that the barge was unloaded and that the agency hired to do the unloading failed to tie this particular safety rope in its proper place. It is suggested that this agency was an independent contractor but of that there is no competent proof. A principal is answerable for the negligence of its servant or agent done in the course of duty. The statute, *supra,* under which this action is brought, provides that "every common carrier or a railroad while engaged in com-

merce between any of the several states or territories * * * shall be liable in damages to any person suffering injuries while he is employed by such carrier in such commerce * * * for such injury or death resulting in whole or in part from the negligence of any of the officers, agents or employees of such carrier, or by reason of any defect or insufficiency, due to its negligence in its * * * appliances, boats, wharves or other equipment."

In these circumstances—that the safety lines were in place at 5:30 the preceding evening, when the last inspection was made; that thereafter the cargo had been removed from the freight house by the Spencer Co. (a stevedoring agency); that no other inspection was made up to the time of the accident when the safety line was not in place across the door where the plaintiff fell—a question for the jury as to whether or not the appellant had exercised reasonable care was raised.

As to the court's refusal to direct a verdict on the second count, it is argued that the plaintiff was not such an employee, that is, a seaman, as to be entitled to "maintenance and cure;" that the plaintiff did not sign articles for a specific voyage; that his work was eight hours daily; that he was neither fed nor lodged on the boat and consequently was not a seaman. But the difficulty that the appellant does not overcome is the fact that in the first and second counts of the complaint it is asserted that the plaintiff was a seaman on the tug *Allentown,* on navigable waters of the United States, and the answer admits these allegations to be true. It is said that a seaman's right to maintenance and cure if he is injured or falls sick in the service of his ship is as old as maritime law itself and, while the right is not created by statute, it has always been recognized "under the laws of various times and peoples." 56 *C. J.* 1066, §§ 582, *et seq.* The plaintiff's status as a seaman having been conceded, we do not think the right to maintenance and cure need be expressly a part of the contract. It is implicit in all such contracts. The appellant also argues that plaintiff's exclusive remedy was under the Employers' Liability Act. By this is meant that the claim of the plaintiff for maintenance and cure should not have been submitted to the jury. No authority is cited on

this point. The plaintiff in the second count merely stated an alternative cause of action. Nothing in Federal Employers' Liability Act itself suggests that the right of maintenance and cure is quieted if action for damages for personal injuries is instituted under the statute. *Pacific S. S. Co.* v. *Peterson,* 278 *U. S.* 130.

It is next said that the learned trial judge erred in his charge. The exceptions were to the court's charge to the jury that Dwyer "was a seaman" and the further instruction that if plaintiff sustained his accident as he described it then the jury must find a verdict for the plaintiff for maintenance and cure. We see no error in this. As pointed out above, defendant in its answer conceded that plaintiff was a seaman and if he was, and if the jury found that he suffered injury as he said he did, it was required that he have a verdict for maintenance and cure even though he had not established the defendant's negligence under the first count.

It is next said the court erred in defining the term "maintenance" to include wages. The cases on the point justify the inclusion of wages as an element of maintenance and cure. See *Progress,* 21 *Fed. Rep. (2d)* 572, and cases cited; 56 *C. J.* 1078. § 619.

We find no error. The judgment will be affirmed.